My name is Alejandra Baird Lopez and I represent Ms. Betsy Ann Carrasquillo-Penaloza in this appeal. Initially, I'd like to ask, if I may, for two minutes for rebuttal? Yes. Thank you. My client contests the inter-jurisdictional application of the statute under which she was convicted under the Commerce Clause. I'd like to focus my arguments this morning on the Commerce Clause violation. The waiver of appeal issue is extensively discussed in the brief, and any argument by the government that the statute is supported by Congress's plenary power under the Territorial Clause is foreclosed by the precedence of this Court. I think you'd better replan what you intend to do. The waiver of appeal issue is quite a serious one, and First Circuit laws floutly against your argument. It's up to you whether you care to address the more important issue in the case. I do well, respectfully, Your Honor. I think that the waiver of appeal issue is foreclosed by a precedent of this Court, which is United States v. DeSanto, which specifically held that a Commerce Clause challenge was not waived by a guilty plea. And in that case, the Court held that it would examine the issue. So I believe that as prior precedent, it is binding on this Court under the law of the circuit doctrine. The authority cited by the government for that waiver of appeal issue, saying that a challenge to the constitutionality of a statute is waived by a guilty plea, is the Cardales-Luna case. And there are several cases that rely on that case as well, but that case did not actually, that issue was not briefed or argued before the Court. It was addressed because of the dissent in the case, which was actually written by Judge Torruella, who has continually throughout several cases afterwards, opposed that application. The prior authority of this Court in the First Circuit, which is U.S. v. DeSanto, which allows for the examination of a constitutional challenge to a statute, was never discussed by Cardales-Luna and the other authority which came after, which cites Cardales-Luna as authority. So I believe it is foreclosed by the law of the circuit. I would be happy to answer any questions that the Court may have as to that issue, but I would like to still focus on the Commerce Clause. On the Commerce Clause issue, why does it matter if Congress had the authority under the Territory Clause? Well, again, there is authority in this circuit, specifically U.S. v. Quiñones, which is binding on this Court under the law of the circuit rule, that Puerto Rico ceased being a territory of the United States subject to the plenary powers of Congress. The citation is 758 Federal 2nd 40, and that is a 1985 case which is binding on this Court. This Court has never overruled that case. That case has never been abrogated. So I understand that it is binding on this Court, and incidentally the position that we take with respect to that issue, with respect to the application of the supposed plenary powers of Congress under the Territory Clause with respect to Puerto Rico, is entirely consistent with the position that the Government of Puerto Rico has taken before the Supreme Court under pending litigation. Well, should we wait for that case to be decided before deciding this case? I don't think, I mean, that is a decision for the Court. I don't think that that would necessarily be useful because the case decided by the Supreme Court will not necessarily be conclusive as to the issue on this case. It really depends on how the Supreme Court decides to render its decision. Well, if the Supreme Court, if the Court takes the U.S. Government's position in that case, the position of the Solicitor General, it certainly would have a bearing on this case, wouldn't you say? I think it would certainly be relevant. I think it would very possibly be relevant in this case, and obviously if it adopted the Government's position wholesale, which it may or may not do, but if it did happen to adopt the position wholesale, it would be relevant in this case. Certainly it would be decisive in this case, but there is no telling whether the Supreme Court will or whether it will decide the case on more narrow grounds. So, I think that this Court should decide this case based on its own precedent. This Court has ample experience dealing with the Puerto Rico issue, and as I say, the U.S. v. Quiñones precedent has never been overruled by this Court. Moving on to the Commerce Clause issue. The statute in this case outlaws conduct which is not an individual in its character, extension, and effect. In U.S. v. Morrison, the Supreme Court used four factors to determine whether the conduct regulated there substantially affected interstate commerce. None of those factors support the exercise of Commerce Clause power here. The first factor in Morrison was whether the statute regulates economic or commercial activity. Here the conduct that is regulated is transportation of an individual that is not economic or commercial activity. The second factor in Morrison asks... The government claims that because they drove in a car that had at one point been interstate commerce. That's enough. Well, that would be relevant if this were an as-applied challenge. This is a facial challenge to the statute. The statute does not require that the transportation be federal funding or it could be in a bus, it could be walking, it could be on a motorcycle, it could be any kind of transportation. It does not require in any aspect of the statute the use of an instrumentality or channel of interstate commerce. That is not required by the statute. This is a facial challenge to the statute. The second factor considered in Morrison was whether the statute contains an jurisdictional element. There is no jurisdictional element in this statute. In virtually all the cases I have been able to examine on the Commerce Clause in the First Circuit where the court upheld a statute against a Commerce Clause challenge, there was a jurisdictional element. So although that factor is not dispositive of the issue, it is certainly very relevant because a jurisdictional element allows the court to enter into the facts of a case and decide on a case-by-case basis whether or not in that case interstate commerce was affected. Here there is no jurisdictional element, so the court isn't able to enter into those details of the actual case. The third factor in Morrison is whether there are legislative findings regarding the regulated activities impact on interstate commerce. There are no legislative findings regarding intra-jurisdictional transportation in this case. This statute is very old. It is over 100 years old and at the time the Congress clearly premised its regulation of intra-jurisdictional transportation on police powers that it had in the District of Columbia and I see my time is up. If I could just finish the sentence. Sure. Sure. When, I'm sorry, I lost my train of thought. There are no legislative findings. Just to quickly, the fourth factor is whether the link between the regulated activity and the substantial effect on interstate commerce is close or attenuated. The government has offered no link here. Thank you, Your Honor. Thank you. Good morning, Your Honors. I want to rise on behalf of the United States. May I please introduce the court? Your Honors, as Judge Lynch mentioned, she is completely right. The precedent in this circuit is against the defendant's arguments as to the waiver claim. As this court has repeatedly held, an unconditional guilty plea constitutes a waiver of any and all independent non-jurisdictional lapses. And this court's decision in Cardales-Luna is on all fours in this case. There the court determined that whether the Congress had authority to make the MDLEA applicable to extraterritorial activity was not an issue that implicated subject matter jurisdiction. This case is very similar. Here the defendant challenges whether Congress had authority to make not the MDLEA but here the Mann Act applicable to intra-territorial activity within Puerto Rico. Therefore, Cardales-Luna forecloses her claim that her challenge implicates subject matter jurisdiction. She tries to undermine Cardales-Luna, arguing that an earlier decision by this court, DeSanto, a 1996 case, held otherwise. But she misreads DeSanto. A careful reading of DeSanto shows that its use of the word jurisdiction was dicta. In DeSanto, the defendant challenged the federal arson statute on constitutional grounds for the first time on appeal. But importantly, because the claim failed under any circumstances, the defendant could have been waived or forfeited. And we refer this court to footnote 4 of the opinion, which states, we need not address, in reference to the waiver issue, we need not address this issue or decide whether this case falls within Griffith because regardless of the waiver, appellant does not prevail on the merits. Therefore, the court indeed, now it has long been held that subject matter jurisdiction can never be forfeited or waived. So it is clear that the court indeed left open the issue of whether the claim in that case implicated subject matter jurisdiction. Otherwise, there would have been no question on the waiver issue. Therefore, DeSanto is not precedent for purposes of defining subject matter jurisdiction. In contrast, Cardales-Luna turned precisely on whether the issue there covered subject matter jurisdiction. Is there anything different in the MDLA statute, in this statute, the language that's used that might affect your argument? I don't see any difference that would be material, Your Honor. Basically, the challenge that was pressed in Cardales-Luna, as I mentioned, was as to the extraterritorial application of the statute here. Is there something in the statute that prevents us from going into the issue of jurisdiction in the Cardales case? Not that I'm aware of, and the defendant has not argued that there is, so we would argue that it is waived, that type of argument. But, Your Honors, this Court need not resolve that waiver issue because the case clearly falters on the merits. In Crespo, in 1945, this Court held that Congress has broad plenary power under the Territorial Clause to make the Mann Act applicable to transportation. That was in 1945, though, wasn't it? Yes, Your Honor, and this Court held that under the Territorial Clause, Congress indeed has power to make the Mann Act applicable to transportation wholly in Puerto Rico, and the defendant does not argue that Crespo was wrongly decided. Rather, she argues that the issue she raises is whether the 1950 Puerto Rico Federal Relations Act and the Puerto Rico Constitution implicitly overruled Crespo by changing Puerto Rico's constitutional status. And we submit that this Court's case law is clear from this circuit, from the Supreme Court, and sister circuits, that Puerto Rico is still constitutionally a territory. And we cited cases to that effect in our brief. Most recently in Franklin last year, this Court reiterated exactly that while quoting with approval from Your Honor, Judge Mendoza, that Puerto Rico is still a territory. And in this case, the defendant relies on Quiñones' statements that Puerto Rico ceased being a territory. But Your Honors, that statement was also dicta. The issue in Quiñones was whether the fact that Puerto Rico's Constitution prohibited wiretapping, whether that meant that evidence obtained in Puerto Rico through Title III was inadmissible in federal court. But the panel's discussion makes clear that regardless of whether Puerto Rico was treated as a territory or something more akin to a state, the evidence was admissible in federal court. So the Court's comments as to whether Puerto Rico was a territory are not essential to the holding and do not constitute binding precedent on this Court. But in any event... I'd just like to get to some of the underlying policy issues. It seems to me that her argument leaves open, would leave open any constitutional challenge as an exception to waivers of appeal and guilty pleas. I'm not certain I see any limitation to her principle. And it would strike me that would be of major concern to the federal prosecution in Puerto Rico in particular. Almost anything can be characterized as having a constitutional question involved. Just what percentage of the cases in Puerto Rico end up with guilty pleas? And then if you know, what percentage of those have waivers of appeal? I would imagine the waiver of appeal is the subject of bargaining between the two sides. So if you could provide some information on that, it would be helpful. As to the specific statistics, Your Honor, I could provide a 28-J letter with more precise numbers. But as this Court is aware, a large degree of cases are pleaded out. And many of them, the ones that have a plea agreement, they have a standard waiver of appeal provision. But in this case, it's not only the waiver of appeal provision. It's the fact that she pled guilty unconditionally that provides an even better argument as to the... As a matter of law, apart from this question of waiver of appeals, it was her choice to do that, and she knew that. At that point, she waives all arguments. And she does not argue that her unconditional guilty plea was unknowing or involuntary. So that would be a waived argument, Your Honor. And in fact, she had tried out her constitutional argument before the District Court, before she chose to plead guilty. Yes, Your Honor. And the Court ruled against her. So she should have known by an unconditional plea of guilty that she had waived the argument. Yes, Your Honor. So what if neither the parties nor the Court... What if there was nothing in the record to suggest that either the parties or the Court even saw the issue, and yet there was still an unconditional guilty plea? Would that then subject this to plain error? I know our cases say it constitutes a waiver, but I'm not sure they've really analyzed that question. If everybody were operating under this false assumption that there was jurisdiction... Actually, because of the way the Tollett Rule has been applied by this Court, if there is an unconditional guilty plea, the effect is waiver, and there is no exception except the very limited exception of whether it involves subject matter jurisdiction and the cases that we discussed in our brief, two cases, Blackledge and Mena. One, which establishes the right to appeal, due process right to appeal, that's Blackledge and Mena. It's in the double jeopardy context. None of those cases are applicable here. So the unconditional guilty plea has been applied in this Court to effectuate a waiver as to, in the words of this Court's precedents, any and all independent non-jurisdictional lapses. So we submit that the effect would be its waiver. And I do want to address... Tell me, you say that this is a stronger argument than the waiver, the express waiver of appeal provision in the plea agreement. What's the weakness there? Why is this one stronger? I never implied that there was a weakness there, but this Court has recognized the miscarriage of justice exception in the context of waivers of appeal as part of the teeter test. But no such exception has been recognized in the context of the toll-it rule. So in that sense, the toll-it rule is an even stronger argument. I see. I did want to address the defendant's explanation of Sanchez-Valle very quickly, Your Honors, if I have an opportunity. It's relevant to point out that even the Commonwealth of Puerto Rico, in the case that is currently before the Supreme Court, Sanchez-Valle, the Commonwealth of Puerto Rico does not argue that it is not subject to the territorial clause. Actually, in the Commonwealth's reply brief, page 22, footnote 3, the Commonwealth states, Puerto Rico does not contend that it is a state. Rather, the territorial clause applies under the terms of the compact. So regardless of Puerto Rico's theory as to why the territorial clause applies, they're consistent to the effect that it does apply in Puerto Rico. It's not subject to the territorial clause. Puerto Rico is subject to the territorial clause. Okay, thank you. Under the Commonwealth's arguments. Thank you, Your Honors. Yes, Your Honors, I just wanted to clarify. U.S. DeSanto is on all fours with what is raised in this case. And in response to counsel's argument that we've misinterpreted it, what DeSanto says is literally, and I'm quoting, a claim that a statute is unconstitutional or that the court-like jurisdiction may be raised for the first time on appeal. A claim that a statute is unconstitutional may be raised for the first time on appeal. That's what DeSanto says. Do you see any tension between your reading of DeSanto and the Tollett Rule that says that there are only two exceptions? Well, the, just, I'm sorry. No, go ahead. The Tollett Rule, this was decided after the Tollett Rule, and so it takes it into account. Now a number of other circuits who have examined this question also believe that a constitutional challenge to a statute, which is different from any constitutional challenge. We're not challenging here a Fourth Amendment violation or a confession. This is that the statute itself lacks a fundamental basis in law. This is a different kind of challenge than just any constitutional challenge. Why would it matter? It would matter because that's what deprives the court of jurisdiction. That's what would deprive the district court of jurisdiction. Well, you're asserting a sort of hierarchy of constitutional claims. No. You get better treatment if you choose to challenge the statute than you choose to challenge the application of the statute. No, I believe that's not correct. I believe that the challenge to the statute is what undermines the jurisdiction of the Supreme Court. It's not just any constitutional argument. As I said, this is. So could the claim be brought in a habeas petition if it had never been raised before? I confess I haven't examined or analyzed that question. How about quorum nobis long after the sentence has been served? I'm not sure, Your Honor. I confess that I haven't examined that particular aspect of the issue. I would be happy if the court thinks it's necessary. No, I just wanted to know if you thought there were any limiting principle at all in terms of the time that it could be brought, what it's going to do to the finality rules. Well, I'm not sure, but I think definitely before the judgment is final and firm, it would be reasonable to still allow a constitutional challenge to the actual statute, to the underlying statute, which provided the basis for the conviction. Could a defendant enter into a contract with the government that, even though it might have such a claim, it would not raise the claim? And would a contract that said that, an agreement that said that, be binding? I believe if it's not waivable, it's not waivable. So you wouldn't apply contract principles like we usually do when we have plea agreements? Well, if it's not waivable, I believe it's not waivable. I cannot envision a situation in which, if it's not waivable, that a defendant could renounce the right to bring it up later on. I might be wrong. I haven't gotten that far yet. That is not the situation in this case. If this were not the issue in the case, if something else were being raised, do we have an independent obligation as the appellate court to look into this question, if one of us has some idea that maybe there's a question about it? I believe that if this is a jurisdictional issue, it's also, and I have to point out, and we argue it in our brief, although it may not be clear, but there is a different exception, which is the Blackidge-Mena exception, which includes both of those cases, and this court has stated that those are two separate exceptions. One is the jurisdictional rule, and one is the Blackidge-Mena exception, and this case falls into either of those two. I just want to also point out, and it's in the reply brief, the reply brief addresses the waiver issue, and it cites the Supreme Court's authority in the Haines case, which is also relevant. If the court has no more questions, I thank you for your time. Thank you both. Thank you.